Mark A. BALL, Plaintiff–Appellant,

v.

CITY OF CHICAGO and Alfred S. Schultz, individually and as agent of the City of Chicago, Defendants–Appellees.

No. 92–3358.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided Aug. 12, 1993.

Rehearing and Rehearing En Banc Denied Sept. 16, 1993.*

---

* Hon. Ilana Diamond Rovner took no part in the consideration of the suggestion for rehearing en banc.

William J. Harte (argued), Joan M. Mannix, Michael J. Progar, Charles E. Webster, Marvin A. Brustin, Chicago, IL, for plaintiff-appellant.

Jean Dobrer, Asst. Corp. Counsel (argued), Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before POSNER, FLAUM, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

Mark Ball brought suit against the City of Chicago and one of its police officers, claiming that the officer had violated his federal constitutional rights by using excessive force—namely by shooting him—while attempting to arrest him; Ball had recently been released from a mental institution, and was wielding a butcher knife when shot. The district judge dismissed the suit (which contained state-law counts as well, included under the district court's supplemental jurisdiction) for failure to prosecute; such a dismissal is with prejudice, and thus bars Ball from reinstituting it. Fed.R.Civ.P. 41(b). The judge's handling of this difficult matter has stimulated us to think about the principles that ought to guide district judges in the exercise of their discretion to impose sanctions, up to and including dismissal, because of dilatory or obstructive behavior by litigants or their lawyers.

Ball's suit had been filed in state court in March of 1990 and removed by the defendants the next month to federal district court. A pretrial conference was scheduled for August 14, 1990. The plaintiff's lawyer failed to appear. The judge rescheduled the conference for September 14 (later postponed to September 18), but on September 4 issued a rule to show cause why the case should not be dismissed because of the failure of the plaintiff's lawyer to show up at the August 14 conference. A standing order of the district judge warned that failure to appear at a pretrial conference is grounds for dismissal of a suit. The judge, however, cancelled both the rescheduled pretrial conference and the rule to show cause, instead setting a new schedule for pleadings and discovery. On February 13, 1991, after Ball's lawyer had failed to respond to the defendants' motion to dismiss the suit, the judge issued an order that discovery be completed by May 15. The order stated that no extensions of time would be granted, yet later she did grant an extension of time—in fact, though critical of "plaintiff's failure to fashion a comprehensible complaint despite two subsequent amendments," she allowed the plaintiff to file a third amended complaint and it was filed on time on August 14. After that the case was back on track for a while but soon Ball's lawyer was again missing filing deadlines and skipping status hearings. Understandably the judge's patience began to wear thin. In an order scheduling a status hearing for January 29, 1992, she reviewed in detail "the consistent failure of plaintiff's counsel in this case to comply with the orders of this Court" and to attend scheduled status hearings, and ended by saying: "The above litany of horribles simply is a disgrace to counsel and his client. The Court will no longer countenance such conduct. Plaintiff's counsel is hereby warned that any further non-compliance with the orders of this Court will result in the entry of appropriate sanctions, including the possible dismissal of this case for want of prosecution." Nevertheless the plaintiff's lawyer failed to appear at the January 29 status hearing. This was his fourth failure to appear. The judge ordered him to pay $75 to the City of Chicago for having wasted a half

hour of the time of the city's lawyer, and added "that the next disregard of any court order will result in the dismissal of this case for want of prosecution."

Another status hearing was held on March 25 and this time a lawyer for Ball appeared—but a new lawyer, who explained that his partner, Ball's primary counsel, had had a heart attack. The judge thereupon extended for up to 45 days the deadlines for various filings due from Ball, which pushed the deadline for answers to interrogatories concerning Ball's expert witnesses back to April 10—but the answers were not filed then. On May 7 Ball's lawyer represented that the answers would be filed by June 2, and the court obligingly ordered that all outstanding discovery requests be answered by June 12, again warning that failure to comply would result in sanctions, including possible dismissal of the suit for failure to prosecute it. When on June 22 Ball had still failed to answer the interrogatories concerning the expert witnesses, the judge ruled that the experts would not be permitted to testify. On June 29 she dismissed the suit on her own initiative for failure to prosecute, explaining that the failure to answer the expert interrogatories, which had been outstanding for more than a year, was the last straw.

The case was not ancient at 27 months when it was dismissed. According to statistics compiled by the Administrative Office of the U.S. Courts, during the twelve-month period ending on September 30, 1992, the median time from filing to disposition of civil cases tried in the Northern District of Illinois was 24 months, and ten percent took more than 59 months to dispose of. Of course, considering how little progress had been made in 27 months, this case if allowed to continue might well have ended up in that more–than–59–month tail. The plaintiff's lawyers had not, however, been completely idle the entire 27 months. They had filed four complaints, had conducted some discovery, had responded to some though by no means all of the defendants' discovery requests—had even attended some of the pretrial conferences and status hearings. So dismissal of the suit for failure to prosecute may seem a misnomer. But, labels aside, the ground for the district judge's action is clear enough. She was fed up with the rude, dilatory, evasive, disrespectful—indeed contemptuous—conduct of the plaintiff's lawyers and considered dismissal of the suit an appropriate sanction and one of which she had given the lawyers more than adequate warning. The plaintiff's lawyers were refusing to play by the rules of the litigation game. They had repeatedly and unjustifiably failed to comply with perfectly reasonable orders. Although the judge had given them ample opportunity to mend their ways, there was no hint of improvement. It became apparent that these lawyers were unlikely to be able to prosecute the case to a conclusion within a reasonable amount of time and without disrupting a busy district judge's tight calendar to the possible prejudice of the litigants in her other cases. The lawyers had a good excuse for some of their delays and defaults—the heart attack and continuing coronary problems of the plaintiff's lead counsel—and worked it for all it was worth, and more; as the district judge explained, the excuse was applicable to only a small portion of the total course of conduct that persuaded her that the case was going nowhere.

Ball's new counsel argues that dismissal is a harsh sanction, which it is, and points to a number of cases in this circuit, illustrated by *Del Carmen v. Emerson Electric Co.*, 908 F.2d 158 (7th Cir.1990), and *Penny v. Shansky*, 884 F.2d 329 (7th Cir.1989), in which district judges have been reversed because they precipitately dismissed a case for want of prosecution. He points out that the brunt of the sanction falls on a blameless plaintiff, for there is no suggestion that Mark Ball did anything to delay the suit and indeed there is doubt that he is mentally competent even to understand the proceedings. Ball's new counsel asks us to adopt a judge-made rule of the Third Circuit that before dismissing a suit for failure to prosecute, the district judge must notify the plaintiff directly so that he can consider whether to replace his lawyer. *Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 129 (3d Cir.1987); *Curtis T. Bedwell & Sons v. International Fidelity Ins. Co.*, 843 F.2d 683, 693 n. 19 (3d Cir.1988); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1147 (3d Cir.1990).

Our cases, like those of other circuits, contain "hard" dicta (as in *Lockhart v. Sullivan*, 925 F.2d 214, 219 (7th Cir.1991), and *Washington v. Walker*, 734 F.2d 1237 (7th Cir. 1984)) and "soft" dicta (as in *Owen v. Wangerin*, 985 F.2d 312 (7th Cir.1993), and *Palmer v. City of Decatur*, 814 F.2d 426 (7th Cir. 1987), which could be thought to anticipate the Third Circuit's rule, see *id.* at 428) concerning dismissals for failure to prosecute; and it is not even certain that all the holdings can be reconciled. The circumstances warranting such a dismissal are infinitely variable, making it difficult to formulate a standard more particular than that the district judge should not act precipitately, willfully, unreasonably, but also making it difficult to determine when the standard has been correctly applied. Fixed deadlines are a possibility but have their own problems. To specify for example that a suit cannot be dismissed for want of prosecution unless it has reached a fixed age might tend to make that amount of delay a minimum, in effect lengthening the deadlines for filings set in the federal civil rules—though N.D.Ill.R. 21(A) provides that a case that has been inactive for more than six months is a candidate for dismissal for failure to prosecute, and we do not mean to disparage such an approach.

■ Given the variability of circumstances from case to case, the fact that the district judge will have acquired a better feel than we appellate judges can for the attitudes of the litigants and lawyers in the district court, the judge's greater familiarity with his own calendar, and the inherently judgmental character of managerial decision-making, appellate review of a decision to dismiss a suit for failure to prosecute should be deferential. *Penny v. Shansky, supra,* 884 F.2d at 330; *3 Penny Theatre Corp. v. Plitt Theatres, Inc.,* 812 F.2d 337, 339 (7th Cir.1987). The district judge should be presumed to have acted reasonably, and reversal is warranted therefore only if it is plain either that the dismissal was a mistake or that the judge did not consider factors essential to the exercise of a sound discretion. The very extent of the deference that is given district judges' judgments in these matters, however, makes it all the more important that there be some, if in the nature

of the problem only loose and approximate, guidelines for the exercise of that discretion. Henry J. Friendly, "Indiscretion about Discretion," 31 *Emory L.J.* 747, 768–70 (1982). "Discretion is not unbridled; it is exercised under law." *In re Oil Spill of the Amoco Cadiz,* 954 F.2d 1279, 1334 (7th Cir.1992) (per curiam).

■ Several principles have emerged to canalize the district judge's discretion. To begin with, because the standard for dismissing a case for failure to prosecute it is, in the nature of the problem, unclear, the judge should not dismiss a case on this ground without due warning to the plaintiff's counsel. 5 James Wm. Moore, Jo Desha Lucas & Jeremy C. Wicker, *Moore's Federal Practice* ¶ 41.11[2] at pp. 41–114 to 41–115 (2d ed. 1992). "Due warning" need not be repeated warnings and need not be formalized in a rule to show cause. A judge is not obliged to treat lawyers like children. But there should be an explicit warning in every case. Many cases in this and other circuits so hold or intimate. *Schilling v. Walworth County Park & Planning Commission,* 805 F.2d 272, 275–77 (7th Cir.1986); *Palmer v. City of Decatur, supra,* 814 F.2d at 429; *Penny v. Shansky, supra,* 884 F.2d at 330; *Velazquez–Rivera v. Sea–Land Service, Inc.,* 920 F.2d 1072, 1078 and n. 9 (1st Cir.1990); *Schenck v. Bear, Stearns & Co.,* 583 F.2d 58, 59 (2d Cir.1978); *Saylor v. Bastedo,* 623 F.2d 230, 238–39 (2d Cir.1980) (Friendly, J.); *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990); *Kenney v. California Tanker Co.,* 381 F.2d 775, 778 (3d Cir.1967); *Ballard v. Carlson,* 882 F.2d 93, 95 (4th Cir.1989); *Ramsay v. Bailey,* 531 F.2d 706, 709 (5th Cir.1976) (per curiam); *Hepperle v. Johnston,* 590 F.2d 609, 613 (5th Cir.1979); *Harris v. Callwood,* 844 F.2d 1254, 1256 (6th Cir.1988); *Vinci v. Consolidated Rail Corp.,* 927 F.2d 287, 288 (6th Cir.1991) (per curiam); *Oliva v. Sullivan,* 958 F.2d 272, 274 (9th Cir.1992). A district judge's standing order that merely repeats, what is anyway well known, that dismissal for failure to prosecute is a possible sanction for failing to comply with the schedule set by the court is too general. *Vinci v. Consolidated Rail Corp., supra,* 927 F.2d at 288. It is little better

than the statement of a truism. The district judge in this case properly did not rely on her standing order to warn the plaintiffs' lawyers that the case might be dismissed for failure to prosecute; she warned them directly and explicitly.

These remarks about the duty to warn may seem in tension with *Link v. Wabash R.R.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962), where the Supreme Court held that the absence of express notice is not an automatic denial of due process. See also *Lockhart v. Sullivan, supra*, 925 F.2d at 219; *Colokathis v. Wentworth–Douglass Hospital*, 693 F.2d 7, 9 (1st Cir.1982); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir.1982). There can be no quarrel with that principle—so easy is it to imagine circumstances in which express notice would be unnecessary to satisfy anyone's conception of due process—for example if the lawyer told the judge, "I know you'll dismiss the case for failure to prosecute the next time I default; you don't have to tell me." Or if an unrepresented plaintiff changed his address and did not give the court his new one. *Carey v. King*, 856 F.2d 1439 (9th Cir.1988) (per curiam). But the question is not what is required by due process. It is what is proper to channel the district judge's exercise of discretion. Reversal is not warranted if, as in the hypothetical case just given, it is plain that the plaintiff's lawyer knew that he faced dismissal of his case. But to obviate any question, district judges would be well advised to give the lawyer an express warning before dismissing a case for failure to prosecute. The issuance of a single warning does not entail significant delay and should not be a burden to the judge or to the opposing party.

■ But we do not think that there should be an ironclad requirement that the district judge notify the plaintiff himself, as distinct from his lawyer, before dismissing. The Supreme Court made clear in *Link* that dismissal for failure to prosecute is an appropriate sanction for lawyers' delays and defaults even if the plaintiff is blameless; the sins of the agent can be visited upon the principal. 370 U.S. at 633–34, 82 S.Ct. at 1390; cf. *Pioneer Investment Services Co. v. Bruns-*

*wick Associates Limited Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The requirement for which the plaintiff contends and which the Third Circuit has adopted is a source of potential delay in lawsuits that by hypothesis have already been delayed unduly. The objection to imposing such a requirement inflexibly in every case is illustrated by the present case, where the plaintiff's mental problems might well have made the gesture a useless one.

The district judge has, however, though not the duty the power to notify the plaintiff of the impending demise of his suit as a result of his lawyer's delicts and omissions and to give the plaintiff an opportunity to retain substitute counsel, with due regard for any prejudice to the defendant from the delay entailed by a switch of counsel. Severe problems of information due to the complexities and mysteries of law and of legal procedure make it difficult for unsophisticated clients to monitor their lawyers. Ours is an adversarial system and the judge cannot play lawyer for one or for that matter both sides of a case before him, but, time permitting and always with due regard for the interests of the opposing party and other litigants, he is entitled to advise a litigant of a prejudicial default by the litigant's lawyer, just as he is required to advise unrepresented litigants concerning some of the obscurer pitfalls of legal procedure. *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982); *Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir. 1985); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir.1992).

■ The judge is not required to impose graduated sanctions—what in labor relations is termed "progressive discipline"—before dismissing a case for failure to prosecute. *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir.1992); *Lockhart v. Sullivan, supra*, 925 F.2d at 219; *Daniels v. Brennan*, 887 F.2d 783, 788–89 (7th Cir.1989); *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir.1989); *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 284 (7th Cir.1988) (per curiam). *Newman* expressly rejected

the contrary position taken in *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187 (D.C.Cir.1985), and hinted at in earlier cases such as *Navarro v. Chief of Police*, 523 F.2d 214, 217 (8th Cir.1975) (per curiam), and *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir.1977). Lawyers are better educated and more attuned to the importance of complying with rules than the average worker is. An explicit warning should be enough. But the judge who does follow a policy of escalated sanctions should be careful not to convey misleading signals, as may have happened in this case. The first sanction that the judge imposed was an award of $75 in attorney's fees to opposing counsel, to be paid by the plaintiff's lawyers. The second sanction was the preclusion of certain expert testimony. The third was dismissal of the suit. That was quite a jump. The order to pay $75 was a trivial sanction. We do not know how significant the preclusion of the expert testimony was. Then came the dismissal, which, depending on the value of this suit (of which we know nothing), could have been the equivalent of fining the plaintiff and his lawyers hundreds of thousands of dollars.

We do not want to put too much weight on this point. Actions may speak louder than words, but words convey meaning too. A sanction smaller than the fee for filing a case may make a slap on the wrist look severe, but the district judge's reiterated crystalline warnings of the imminent dismissal of this case could not have been misunderstood and there was in addition the order of preclusion, which came in between the fine and the dismissal. Nevertheless, district judges who follow a policy of escalated sanctions should avoid so gradual, discontinuous, or irregular an escalation—so unpredictable a mixture of mercy and severity—as to convey the impression that they will flinch at imposing the ultimate penalty of dismissal.

Although the propriety of dismissing a suit because of delays and omissions committed solely by the plaintiff's lawyer, with no connivance by the plaintiff, cannot be questioned after *Link*, the anomalous character of such a dismissal, well illustrated by this case, should induce caution. *Jackson v. Washing-*

*ton Monthly Co., supra*, 569 F.2d at 123; *Poulis v. State Farm Fire & Casualty Ins. Co.*, 747 F.2d 863, 868 (3d Cir.1984) (per curiam). A civil rights tort suit (the present case), like other tort suits, has from a social standpoint two objectives. One is deterrence. *Wyatt v. Cole*, —— U.S. ——, ——, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). Tort law backs up criminal law (or maybe vice versa); it is a regulatory regime designed to prevent harmful behavior by attaching a financial sanction to it. The deterrent objective is defeated if a suit is dismissed for failure to prosecute; the defendant walks away scot free even if he did in fact commit the tort for which the plaintiff is suing. *Jackson v. Washington Monthly Co., supra*, 569 F.2d at 123. The second objective of tort law, the compensatory, *Carey v. Piphus*, 435 U.S. 247, 254–56, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978), is less severely impaired by dismissal for failure to prosecute, because the plaintiff can bring a suit for legal malpractice against the lawyer responsible for the dismissal (assuming the plaintiff wasn't himself responsible, but in that event his case probably had little merit). It is an uncertain route to compensation, however. Comment, "Involuntary Dismissal for Disobedience or Delay: The Plaintiff's Plight," 34 *U.Chi.L.Rev.* 922, 930–31 (1967). The fact that compensation is delayed, because the malpractice suit begins only after the tort suit has been dismissed and is therefore likely to end much later than the tort suit would have ended, is the least of the problem. In addition the plaintiff may not even know that he has a claim, for he may know nothing about the ground for the dismissal other than what his lawyer tells him. Furthermore the plaintiff is forced to bring two suits rather than just one. *Poulis v. State Farm Fire & Casualty Ins. Co., supra*, 747 F.2d at 867. And he not only must prove everything he would have had to prove in the tort suit, in order to show that the lawyer's malpractice actually deprived him of a judgment; on top of that he must prove that the dismissal of the tort suit was due to negligence on the part of the lawyer rather than to a mistake by the judge or to sheer bad luck. *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1563 (7th Cir.1987).

Against this it can be argued that the risk of dismissal will give plaintiffs a greater incentive to use due care in hiring and monitoring a lawyer. No doubt it will. *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 609 (7th Cir.1986). The question is how much. Here not much, given the plaintiff's mental state. Moreover, a principal justification for vicarious liability is that the primary wrongdoer may not be effectively deterrable, because he is likely to be judgment-proof. *Konradi v. United States*, 919 F.2d 1207, 1210 (7th Cir.1990); 5 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *The Law of Torts* § 26.1 at p. 8 (2d ed. 1986). That will rarely be the case when the wrongdoer is a lawyer. The lawyer will be amenable to all sorts of sanctions—often more so than his client (this is again a case in point). In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam), the respondents themselves were found to have acted in "flagrant bad faith," so dismissal of their suit was an appropriate sanction. Not so here. Here the responsibility for the circumstances that made the judge conclude that the case was not being prosecuted with due diligence rested squarely on the lawyer. In such circumstances a judge should give serious consideration to punishing the lawyer through a fine, an award of costs and attorney's fees to opposing counsel (the costs and fees to be paid by the plaintiff's lawyer, not the plaintiff) pursuant to Fed.R.Civ.P. 16(f), a citation for contempt, and professional discipline, rather than punishing the plaintiff through dismissal of the suit. *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 n. 2 (7th Cir.1983) (per curiam); *Beeson v. Smith*, 893 F.2d 930, 931 (7th Cir.1990); *Schwarz v. United States*, 384 F.2d 833, 836 (2d Cir.1967); *Poulis v. State Farm Fire & Casualty Ins. Co., supra*, 747 F.2d at 869; *Hillig v. Commissioner*, 916 F.2d 171, 174 (4th Cir.1990); *Doyle v. Murray*, 938 F.2d 33, 35 (4th Cir.1991); *Rogers v. Kroger Co.*, 669 F.2d 317, 322 (5th Cir.1982); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980) (per curiam); *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir.1976). Disciplinary sanctions directed against the misbehaving lawyer "are likely to prove not only more just to the innocent client, but also more effective as a deterrent since they penalize the wrongdoer directly." *Shea v. Donohoe Construction Co.*, 795 F.2d 1071, 1079 (D.C.Cir.1986). See also *Ripalda v. American Operations Corp.*, 977 F.2d 1464, 1467 (D.C.Cir.1992); *Hillig v. Commissioner, supra*, 916 F.2d at 174.

■ In accordance with this principle, countless cases say that the district judge should consider the efficacy of a less severe sanction before dismissing a suit for failure to prosecute. E.g., *Caribbean Transportation Systems, Inc. v. Autoridad de las Navieras de Puerto Rico*, 901 F.2d 196, 197 (1st Cir.1990); *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988); *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749–50 (3d Cir.1982); *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992); *Kilgo v. Ricks*, 983 F.2d 189, 192 (11th Cir.1993). "A court is not necessarily required to take less severe action before imposing the sanction of dismissal, but dismissal should be employed only if the district court has determined that it could not fashion an 'equally effective but less drastic remedy.'" *Velazquez–Rivera v. Sea–Land Service, Inc., supra*, 920 F.2d at 1076 (citations omitted); compare *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986). More severe sanctions are generally more costly than less severe ones; and it should be obvious from our earlier discussion that the dismissal of a possibly meritorious suit imposes potential social as well as private costs greater than those of sanctioning the misbehaving lawyer, if his client has been blameless. So efficiency in sanctions requires that the efficacy of sanctioning the misbehaving lawyer be considered before the sanction of dismissal is imposed on the faultless plaintiff.

*Link*, with its emphasis on the client-principal's responsibility for the misconduct of the lawyer-agent, precludes our laying down a rule making dismissal a last resort, to be used only when efforts to get the lawyer to behave have failed or are adjudged fruitless. Nevertheless, it is a sound practice and one that we commend to our district judges. By giving up on sanctioning the lawyers as early as she did, the district judge in this case may

have allowed the City of Chicago to escape liability for a serious violation of constitutional rights. Our concern is not that the judge failed to administer properly progressive discipline or to make a finding that a less drastic sanction would not have been effective, but that she failed as far as appears to give any consideration to the possibility that a *strong* sanction against the lawyer—not a $75 fine, or an order (only indirectly against the lawyer, just as dismissal itself is only an indirect sanction against the lawyer) precluding certain witnesses from testifying—would obviate any occasion for extinguishing the plaintiff's tort rights. Compare *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir.1985), and *Kilgo v. Ricks, supra*, 983 F.2d at 192, with *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990), and *Morris v. Morgan Stanley Co.*, 942 F.2d 648, 652 (9th Cir.1991).

There is more to be considered. A defendant has legitimate interests that a dismissal for failure to prosecute may be essential to protect; in such a case a less drastic sanction, far from being mandatory, may be a serious error. Defendants are not second-class citizens in our courts. The fact of being sued creates no presumption that the person or institution sued has in fact committed a wrong. Although the direct costs to a defendant of dilatory, obstructive, evasive, or disruptive behavior by a lawyer in a suit can be shifted to that lawyer through appropriate sanctions directed against him rather than against his client, there are indirect costs that cannot readily be shifted in that way. A protracted lawsuit ties up the defendant's time and prolongs the uncertainty and anxiety that are often the principal costs of being sued. Delay may also make it more difficult to mount an effective defense. All these are consequences superadded to the lawful sanction for whatever misconduct the defendant may have engaged in that precipitated the suit—and he may not have engaged in any misconduct. Unwarranted prejudice to a defendant from keeping a suit alive is an important consideration in the choice of sanctions for dilatory behavior from the wide menu available to the district judge. *DeBardeleben v. Quinlan*, 937 F.2d 502, 504 (10th Cir.1991); *Washington v. Walker, supra*, 734

F.2d at 1239; *Lyell Theatre Corp. v. Loews Corp., supra*, 682 F.2d at 43; *Rogers v. Kroger Co., supra*, 669 F.2d at 322 and n. 7; *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 967–68 (9th Cir.1978); *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). The interests of litigants in other cases must also be considered, *Daniels v. Brennan, supra*, 887 F.2d at 788–89; *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir.1980), because delay that disrupts a trial judge's calendar may cause the judge's other trials to be delayed.

■ It should go without saying that the decision whether to dismiss a suit for failure to prosecute should be as disinterested and principled as any other decision that a judge is called upon to make. It should not be based on a judge's desire to improve his statistics or dislike for a class of litigants or of lawsuits. *Hamilton v. Neptune Orient Lines, Ltd.*, 811 F.2d 498, 500 (9th Cir.1987). (There is no suggestion, nor do we believe, that either factor was involved here to the slightest degree.) But it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute. *Beeson v. Smith, supra*, 893 F.2d at 931; *Caribbean Transportation Systems, Inc. v. Autoridad de las Navieras de Puerto Rico, supra*, 901 F.2d at 197; *Poulis v. State Farm Fire & Casualty Ins. Co., supra*, 747 F.2d at 868–69; *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1160 (5th Cir.1985); *American Inmate Paralegal Association v. Cline*, 859 F.2d 59, 61 (8th Cir.1988) (per curiam). If it appears that the suit is unmeritorious, the inference may arise that the lawyer's dilatory and evasive conduct is designed to force an unjust settlement by imposing cost and uncertainty on the defendant. Furthermore, the less meritorious the suit, the less likely is it that dismissing it will impair the deterrent and compensatory objectives of the law under which the plaintiff was proceeding, by letting a wrongdoer get off scot-free.

■ To summarize, the decision whether to dismiss a suit for failure to prosecute should, ideally, take full and careful account of the frequency and magnitude of the plaintiff's failures to comply with deadlines for the

prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel and therefore the appropriateness of sanctioning the plaintiff's lawyer rather than the plaintiff, the effect of the failures in taxing the judge's time and disrupting the judge's calendar to the prejudice of other litigants, the prejudice if any to the defendant from the plaintiff's dilatory conduct, the probable merits of the suit, and (what is closely related) the consequences of dismissal for the social objectives of the type of litigation that the suit represents. There is no "grace period" before dismissal for failure to prosecute is permissible and no requirement of graduated sanctions, but there must be an explicit warning before the case is dismissed. Dismissal for failure to prosecute is, as provided in Fed.R.Civ.P. 41(b), with prejudice, and appellate review is highly deferential.

The egregious conduct of the plaintiff's lawyers in this case, the clear directive of the Supreme Court in *Link v. Wabash R.R.* concerning the client's responsibility for his lawyer's misconduct, and the deference that we accord to the discretionary rulings of an able and experienced district judge, prevent our concluding that the district judge abused her discretion by failing to consider the imposition of a heavier sanction against the lawyers before dismissing the suit. The known mental state of the plaintiff, the lack of indication that his suit lacks substantial merit, the absence of any showing of prejudice to the defendant or other litigants, and the dramatic escalation of sanctions give us serious concern. But the more than ample warnings to the plaintiff's lawyers, the fact that dismissal was not ordered until lesser sanctions had failed, the demonstrated patience of the district judge, and the egregious character of the lawyers' conduct redress the balance sufficiently to persuade us that the district judge cannot be said to have abused her discretion, though we might well have ruled differently had we been in her place.

We are also not persuaded by the alternative contention by the plaintiff's new counsel that the judge applied the wrong standard to the motion to reconsider the dismissal—the exacting standard of Rule 60(b), rather than the more liberal standard of Rule 59(e). *United States v. Deutsch*, 981 F.2d 299, 301

(7th Cir.1992); *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir.1991). The motion did not indicate under which rule it was made, but it was filed within ten days after the judgment dismissing the suit and counsel point to our judge-made rule that any postjudgment motion on the merits made within ten days of the judgment is deemed to be made under Rule 59(e). *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). Our judge-made rule has the limited purpose, however, of reducing disputes over appealability that arise from the fact that a Rule 59(e) motion tolls the time for filing an appeal from the judgment sought to be altered or amended while a Rule 60(b) motion does not. Our rule has nothing to do with the question what standard a judge should apply in evaluating a postjudgment motion. If a litigant wants the benefit of whatever lower threshold of proof Rule 59(e) may offer, it behooves him to indicate that his motion is under Rule 59(e). The motion in this case not only did not mention Rule 59(e); it was not captioned a motion to alter or amend judgment, which is the language of that rule, and indeed used the word "vacate," which is the language of Rule 60(b). It was another example of the incompetent representation that resulted in the dismissal of Mark Ball's suit.

AFFIRMED.