Gail B. WILLIAMS, Plaintiff–Appellant,

v.

CHICAGO BOARD OF EDUCATION, Steve Newton, Jr., individually and as principal of Marshall Metro High School, and Quinella Miller, individually and as chair of the guidance and counseling department at Marshall Metro High School, Defendants–Appellees.

No. 98–1362.

United States Court of Appeals, Seventh Circuit.

Argued July 8, 1998.

Decided Aug. 31, 1998.

854

LaOuida Glover, Paul A. Brady (argued), Chicago, IL, for Plaintiff-Appellant.

Sunil Kumar, James J. Seaberry, Jr. (argued), Ronald S. Samuels, Samuels & Associates, Chicago, IL, for Defendants-Appellees.

Before ESCHBACH, FLAUM and ROVNER, Circuit Judges.

PER CURIAM.

Gail B. Williams filed a complaint under the Americans with Disabilities Act, 42 U.S.C. § 12101, against the Chicago Board of Education ("Board") and Steve Newton, the principal of Marshall Metro High School.[1] After Williams failed on numerous occasions to abide by the district court's orders and scheduled deadlines, the court dismissed Williams' case with prejudice for want of prosecution. Williams appeals the dismissal

of her suit, arguing that the district court abused its discretion. We affirm.

### Facts

For some twenty-five years, Williams worked as a guidance counselor at Marshall Metro High School in Chicago, Illinois. In September of 1993, Williams' new supervisor, Principal Steve Newton, hired Williams to work in the Homebound Program, a federally-funded after-school program for children unable to attend classes. After just three days with the Homebound Program, Newton fired Williams. Williams claims that Newton fired her because of her medical problems, which include acute sinusitis, chronic bronchitis, and arthritis, and his refusal to accommodate her special needs.

Williams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right-to-sue letter from the EEOC, Williams filed suit in district court on February 14, 1997 against the Board and Steve Newton. Attorneys Paul Brady and LaOuida Glover appeared as Williams' counsel of record, and on March 27, 1997, the district court issued an order setting the case's first status hearing for April 10, 1997. By April 10, however, Williams had not yet served either defendant, thereby forcing the court to continue the status hearing to May 8, 1997. By May 8, Williams still had not served the defendants, necessitating yet another rescheduling of the status hearing, this time for May 13, 1997. By May 13, the same lack of service necessitated yet another rescheduling, this time for June 10, 1997. On June 10, attorneys finally filed appearances on behalf of both defendants, enabling the status hearing to proceed. The same day, the court issued a scheduling order that established the following deadlines: mandatory disclosures under Rule 26 of the Federal Rules of Civil Procedure completed by July 10, 1997; disclosure of all experts by November 10, 1997; discovery completed by December 10, 1997; Williams' draft pretrial order and proposed jury instructions submitted to the defendants by December 16, 1997; and appearance of all parties in court on December 23, 1997 to

---

1. Steve Newton filed a motion with this court to adopt the Board's appellee brief, which we granted. Ms. Miller never appeared in district

court, most likely because she was never properly served, and did not file an appellee brief.

submit a joint pretrial order and agreed jury instructions. The case was set for trial in January of 1998, and the court informed the parties that these dates were firm.

On June 19, 1997, the district court granted Williams leave to file a second amended complaint. In its order granting the motion, the district court stated that "all previously set dates stand." The court also reiterated this point on July 1, 1997 when it granted the defendants additional time to answer Williams' second amended complaint.

July of 1997 brought about very little progress in the case. None of the parties made any Rule 26 disclosures, and, despite the Board's agreement with Williams to propound discovery by July 11, 1997, it did not actually deliver any discovery requests to Williams until August 4, 1997. Williams' attorneys, for their part, promised the Board they would attempt to secure the names of Williams' treating physicians by July 7, 1997, but they failed to produce any such information. The Board filed a motion to dismiss the second amended complaint two days later, which the court took under advisement and ordered Williams to respond to by July 29, 1997. Williams missed the deadline by two days "due to a glitch in counsel's technology" but was given leave to file an untimely response. The court ultimately granted the motion in part and denied it in part.

On August 12, 1997, Steve Newton's attorneys filed a motion to withdraw as counsel for Newton, citing as the cause for their motion Newton's lack of cooperation with the defense. The court granted the motion and subsequently entered a technical default against Newton for failure to answer the second amended complaint or to otherwise plead.[2]

On September 4, 1997, one of the Board's attorneys, James Seaberry, phoned LaOuida Glover to inquire whether the Board could soon expect responses to its discovery. Ms. Glover responded that she had never received any of the Board's discovery requests. Mr. Seaberry therefore handdelivered a new set of discovery requests the same day. Notwithstanding the confusion caused by the mis-delivery of the discovery requests and the resultant loss of time, the month of September threatened to pass by without Williams' provision of so much as the name of a single health care provider, witness, or other person possessing discoverable, relevant information. Accordingly, on September 29, 1997, the Board filed a motion seeking leave to subpoena Williams' medical records and to compel Rule 26 disclosures. The Board agreed to withdraw the motion a few days later following Williams' agreement to comply with the Board's discovery requests.

Meanwhile, despite a discovery deadline looming only a few months away, not a single deposition had been conducted. The Board first noticed Williams' deposition for September 24, 1997 but was forced to reschedule the deposition for October 14, 1997 when it became apparent that Williams would not provide discovery responses in advance of the deposition. On October 14, Williams' attorneys canceled the deposition without explanation.

On October 24, 1997, the Board filed a motion to compel responses to its discovery and to request that Williams be produced for her deposition. The court granted the motion and ordered Williams to provide answers to all outstanding written discovery by October 31, 1997, as well as to be available for a deposition on November 10, 1997. The court also expressed its displeasure with the situation, stating: "Quite frankly, I wish [defense] counsel had come in a lot earlier with this motion, but I do not want there to be any misunderstanding that consequences will flow under Rule 37 of the Federal Rules of Civil Procedure if the plaintiff does not comply."[3]

<hr>

2. Williams' attorneys requested entry of a default judgment against Newton on October 14, 1997. The court entered a default seven days later, which Newton immediately sought to vacate. The court vacated the default on October 30, 1997 and instructed Newton to answer the second amended complaint within two weeks. Despite Newton's late re-entry into the case, the court did not alter its various deadlines.

3. Federal Rule of Civil Procedure 37(b)(2) provides that "[i]f a party ... fails to obey an order or to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just [including] .... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R.Civ.P. 37(b)(2).

The court ordered Williams to comply with the Board's outstanding discovery requests by October 31, 1997. Williams, however, simply mailed her responses to the Board's discovery requests on October 31. The responses did not arrive until November 4, 1997, and the answers themselves largely were unresponsive—Williams not only failed to identify witnesses and treating physicians, but she also neglected to specify her damages or her method of computing damages. Moreover, to most of the requests Williams simply responded "investigation continues" or "see production request response." Augmenting Williams' counsel's evident lack of respect for the court and its rules was the last-minute cancellation of Williams' court-scheduled deposition because one of her two attorneys had a bad cold. No explanation was offered as to why the other attorney could not defend the deposition. The Board then correspondingly refused to produce two of its employees for their depositions.

As result of Williams' late and uninformative discovery responses, the Board moved to bar all evidence not within its possession by October 31, 1997. Williams argued in opposition to the Board's motion that such a sanction was "draconian" because she had made a good faith effort to respond to the Board's discovery, had not willfully disregarded the court's discovery schedule, and had been hampered by the Board's equally dilatory behavior. The district court granted the Board's motion, however, and barred Williams from using any evidence not physically within the Board's possession by October 31, 1997. The court rejected Williams' equal culpability argument, noting that Williams had never filed a motion to compel against the Board, and also opined that the sanction was not draconian in light of Williams' counsel's conduct. "Williams' counsel," the court stated, "ha[s] a single client and a case that [is] relatively simple to prepare. Given these circumstances, Williams' failure to provide responsive answers at this late stage of discovery was inappropriate and sanctions are plainly warranted." Finally, the court admonished both parties, warning:

> One message that both parties should not take from this opinion is that they may rely on each other's irresponsible behavior to justify further contumacious conduct

and dilatory tactics, resting comfortably on the (mistaken) belief no sanctions will be imposed and the discovery deadline will be extended. *Let there be no mistake:* further dilatory tactics or bad faith responses on the part of *either* party will result in further sanctions under Rule 37.

The district court's June 10, 1997 standing order required Williams' counsel to submit a draft pretrial order and jury instructions to the defendants by December 16, 1997, and for all parties to appear in court on December 23, 1997 to submit a final joint pretrial order and agreed jury instructions. Although the Board appeared in court on December 23, Williams' counsel neither submitted a draft pretrial order or jury instructions to the defendants on December 16 nor appeared in court on December 23; in fact, Williams' lawyers failed to contact the court in any manner to account for their absence that day. Consequently, on its own initiative, the court dismissed Williams' case for want of prosecution that same day.

One week later, Williams filed a motion to vacate the dismissal and to reset the scheduling order. Williams' counsel, LaOuida Glover, explained that she failed to appear in court because the court's scheduling order was among items stolen from her car. She also predicated her absence on her belief that the court would sua sponte reset its scheduling order in light of the Steve Newton's late re-entry into the case and the slow pace of discovery. The court denied the motion, finding unconvincing Williams' counsel's story about the burglary, particularly when counsel made no effort to recreate her file by visiting the clerks' office or by contacting opposing counsel. Moreover, the court found Williams' counsel at fault for Newton's late re-entry into the case because they waited two months after Newton failed to answer the second amended complaint to seek entry of a default judgment against him. Finally, the court noted its abundant clarity regarding the firmness of the scheduling order dates and its expressed lack of tolerance for further dilatory action from either party.

## Discussion

■ Williams argues on appeal that the district court's sua sponte dismissal of her

lawsuit was a denial of due process and an abuse of discretion because the court neglected to warn her explicitly that dismissal would ensue from her failure to meet the deadlines set in the original scheduling order. Williams also contends that the district court erroneously barred a large portion of her evidence and improperly refused to reset its scheduling order. This court reviews for an abuse of discretion the district court's decision to sanction a plaintiff by dismissing her suit. *Ladien v. Astrachan*, 128 F.3d 1051, 1056 (7th Cir.1997). "The abuse of discretion standard 'means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge.'" *Id.* (quoting *Anderson v. United Parcel Service*, 915 F.2d 313, 315 (7th Cir.1990) (internal citations omitted)). " 'The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur.'" *Id.*

District courts inherently possess the authority to dismiss a case sua sponte for want of prosecution. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Such a dismissal is one of the tools available to district courts "to achieve the orderly and expeditious disposition of cases." *Id.* at 630–31, 82 S.Ct. 1386. Dismissal is a very harsh sanction, however, and should be used "only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir.1998) (citations omitted).

Until 1993, this circuit did not require judges to fire a "warning shot" before dismissing a case for want of prosecution. *See Lockhart v. Sullivan*, 925 F.2d 214, 219 (7th Cir.1991); *see also Link*, 370 U.S. at 632–33, 82 S.Ct. 1386 (lack of express notice before dismissal did not automatically violate the plaintiff's due process rights; whether to give advanced warning was left to the district court's discretion). However, in *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir.1993), we tightened the dismissal procedure in this circuit by requiring district courts to provide "due warning" to plaintiff's counsel before

dismissing a suit for want of prosecution in most cases.[4] We explained the meaning of "due warning" as follows:

> "Due warning" need not be repeated warnings and need not be formalized in a rule to show cause. A judge is not obliged to treat lawyers like children. But there should be an explicit warning in every case.... A district judge's standing order that merely repeats, what is anyway well known, that dismissal for failure to prosecute is a possible sanction for failing to comply with the schedule set by the court is too general.

*Id.* at 755 (internal citations omitted).

In *Ball*, the plaintiff's lawyer repeatedly failed to appear at scheduled pretrial conferences, failed to respond to the defendant's motion to dismiss, and missed numerous filing deadlines. The district court warned the plaintiff that any further disregard of the court's orders would result in appropriate sanctions, including the possible dismissal of the suit for want of prosecution. *Id.* at 753–54. After an additional transgression, the court warned the plaintiff's lawyer "that the next disregard of any court order will result in the dismissal of this case for want of prosecution." *Id.* at 754. The plaintiff's attorney did not heed the warning and proceeded to miss additional discovery deadlines. The court, understandably worn-out, dismissed the suit on its own initiative. Ball appealed.

On appeal, we set forth numerous factors that district courts, as well as appellate courts, should take into consideration when deciding whether to dismiss a case for failure to prosecute. These factors include the frequency and magnitude of the plaintiff's failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit. *Id.* at 759–60. With these factors in mind, we found dismissal appropriate. Plaintiff's counsel repeatedly disregarded the court's orders and deadlines and wasted the court's time and resources despite numerous

---

4. The exception to this rule is where the plaintiff's attorney clearly knows, even without an explicit warning, that the case faces dismissal.

*Ball*, 2 F.3d at 756; *Matter of Bluestein & Co.*, 68 F.3d 1022, 1026 (7th Cir.1995) *(per curiam)*.

warnings that further dilatory behavior would result in dismissal. Moreover, prior to dismissal, the court imposed lesser sanctions against the plaintiff, including a fine and the barring of some expert testimony, in an effort to curb plaintiff's counsel's behavior.[5] *Id.* at 760.

Aside from establishing a baseline rule that explicit warning must be given to a plaintiff's counsel prior to dismissal, we refused in *Ball* to impose additional standards that district courts must follow to effectuate a proper dismissal for failure to prosecute. For instance, we did not say that a district court must recite the word "dismissal," or a synonym thereof, as part of its "explicit" warning. Nor did we impose the requirement that judges notify plaintiffs directly regarding their counsel's behavior to provide them with the opportunity to replace their lawyers. *Id.* at 754. Rather, we recognized that "[t]he circumstances warranting such a dismissal are infinitely variable, making it difficult to formulate a standard more particular than that the district court should not act precipitately, willfully, [or] unreasonably...." *Id.* at 755.

■ In this case, Williams' attorneys clearly tested the judge's patience. Their lack of respect for the rules of litigation and the court's scheduled deadlines was manifest from the case's inception, beginning with their failure to serve the defendants in a timely fashion and their utter disregard for Rule 26's mandatory disclosures. And there was no improvement as the case progressed. Among other things, Williams' counsel missed the deadline to respond to the Board's motion to dismiss; failed to respond to the Board's basic discovery requests and then, after being ordered to respond by a certain date, missed that deadline as well; failed to submit a draft pretrial order and proposed jury instructions to the defendants by the court-scheduled deadline; and then neglected even to appear in court for the scheduled hearing to submit the pretrial or-

der and jury instructions that should have been finalized by that date. The court was not equivocal about this behavior. At the hearing held on October 29, 1997 to rule on the Board's motion to compel, the court warned Williams' attorneys that "consequences will flow under Rule 37 of the Federal Rules of Civil Procedure if the plaintiff does not comply." A simple reading of Rule 37 would have forewarned Williams' lawyers that dismissal lurked as a possible consequence of further noncompliance. Additionally, the court meted out a very stiff sanction on November 24, 1997 when it barred Williams from using any and all evidence not produced to the Board by October 31, 1997. This sanction, which Williams' attorneys themselves characterized as "draconian" in their written opposition to the Board's motion to bar evidence, not only should have alerted Williams' attorneys that the court's warnings were to be taken seriously, but also that the court already had proceeded far along the spectrum of available sanctions and that little else remained as an additional sanction other than outright dismissal. Indeed, the court reminded the parties in its November 24, 1997 order that "further" sanctions under Rule 37 would ensue from continued dilatory tactics or bad faith responses.

■ We conclude that the sequence of events presented in this case supports the district court's dismissal. Williams' attorneys' frequent disregard of discovery rules, protocol, and the court's deadlines and schedules—culminating in their unexplained absence from the court on December 23—were met by the court with two Rule 37 warnings and the barring of an enormous quantity of evidence. These three actions, although lacking an express statement regarding dismissal, comport with *Ball* because, as a whole, they provided "due warning" that dismissal loomed as a real possibility. At the same time, we believe that the facts of this

---

5. A district court judge is not required to impose progressive sanctions before a dismissal. However, as we stated in *Ball*, judges who impose progressive sanctions should take care not to mislead litigants by greatly escalating their sanctions without warning. 2 F.3d at 756. For instance, a judge who dismisses a suit after previ-

ously imposing a light fine could be unfairly lulling litigants into a false sense of security regarding the severity of future sanctions. On the other hand, the imposition of a harsh sanction sends a clear message to a litigant that the next sanction likely could be of equal or greater severity.

case represent the outer limits of *Ball*. While *Ball* does not create a requirement that district court judges say specific words in order to effectuate a proper dismissal for want of prosecution, the most prudent course of action would be to convey, directly and clearly, the potentiality of dismissal. We also remind judges that "the decision whether to dismiss a suit for failure to prosecute should be as disinterested and principled as any other decision that a judge is called upon to make. It should not be based on a judge's desire to improve his statistics or dislike for a class of litigants or of lawsuits." *Ball*, 2 F.3d at 759. Here, although we are compelled to affirm the dismissal, we do not commend the manner in which the judge handled the case, and we urge judges in the future to make even clearer to litigants the ramifications of their actions.

In sum, we find that the nature of Williams' lawyers' conduct, the existence of two sufficiently direct and explicit warnings, and the imposition of a lesser, yet significant, sanction lead us to affirm. In view of this result, we find no error with the district court's decision to bar Williams' evidence or its refusal to reset the scheduling order.

AFFIRMED.