**In re CONTROLLED RELEASE TECHNOLOGIES, INC., Debtor.**

**Andrew J. MAXWELL, Trustee, Plaintiff,**

**v.**

**Loi TRAN and Biomedcare Corporation, Defendants.**

**Bankruptcy No. 90 B 3688. Adv. No. 91 A 746.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 4, 1994.

---

**520**

Timothy J. McGonegle, Chicago, IL.

David M. Jankura, Weissberg and Associates, Chicago, IL.

### MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the motion of the Defendants, Loi Tran and Biomedcare Corporation under Fed.R.Civ.P. 60(b), made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 9024, to vacate a default judgment entered by this court in an adversary proceeding brought by the Trustee against the Defendants. For the reasons stated below, the court vacates the default judgment.[1]

### FACTS

The Debtor, Controlled Release Technologies, Inc. ("CRT"), was in the business of developing and manufacturing biomedical products. Loi Tran ("Tran") has been the Debtor's president and chief executive officer since its inception in 1986. Among the Debtor's assets are four patents for a controlled release drug delivery system which the Debtor manufactured and marketed under the trade name "Micros." The Debtor obtained the patents largely as a result of Tran's research efforts.

On February 27, 1990, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the Debtor. After a number of hearings, the Debtor consented to the entry of an order for relief under Chapter 7 on April 5, 1990. The Debtor immediately exercised its right to convert the Chapter 7 case to one under Chapter 11. *See* 11 U.S.C. § 706(a). Subsequently, after serious questions arose with respect to Tran's man-

---

1. The Defendants have also moved to vacate the default judgment entered in a separate adversary proceeding initiated by the Trustee against Loi Tran, No. 91 A 583. The court, for the reasons stated in a separate opinion, has also vacated the default judgment in that proceeding.

agement of the Debtor, his efforts to frustrate the bankruptcy case by moving the business and certain of its assets from Illinois to California, and possible material misrepresentations by Tran in his efforts to raise capital for the Debtor from public investors, the court ordered the United States Trustee to appoint a Chapter 11 trustee. On July 9, 1990, the United States Trustee appointed Andrew J. Maxwell as Chapter 11 trustee. The Trustee took over the Debtor's assets and business in both Illinois and California to the exclusion of Tran, and Tran was denied access to the Debtor's premises and property.

On August 1, 1990, Tran incorporated Biomedcare Corporation, a California corporation with Tran as its sole shareholder and president. On the surface, at least, Biomedcare's business appears to be remarkably similar to that of the Debtor.

The Trustee has filed two adversary complaints against Tran. The first of those complaints, alleging that Tran, after the order for relief was entered, converted a $10,640 check belonging to the Debtor, was filed on June 4, 1991.[2] The first count of this complaint claimed that Tran fraudulently converted a check the Debtor had received from Lindvall Medical Marketing and that, soon after the order for relief was entered, Tran cashed the check and kept the proceeds. The Trustee's second count sought $100,000 in punitive damages from Tran for the fraudulent conversion of the check.[3]

On July 19, 1991, the Trustee filed a second adversary complaint against Tran and the Biomedcare Corporation.[4] That complaint contained five counts: (1) Count I sought a declaratory judgment that the patents, the "Micros" trade name and certain related technology, intellectual property, and trade secrets were outgrowths of the patents and thus were property of the Debtor's estate; (2) Count II sought to enjoin the Defendants from using the patents and related property; (3) Count III sought an accounting and damages from the Defendants for their illegal use of the Debtor's patents; (4) Count IV was an action for conversion of the patents against the Defendants; and (5) Count V was an action for breach of fiduciary duty against Tran. Pursuant to court order, preliminary pretrial statements were filed on October 7, 1991 and on October 8, 1991, the court held an initial pretrial conference on all aspects of both complaints. On January 26, 1993, the court entered summary judgment for the Trustee on Count I of this complaint, finding that the patents, trademarks, manufacturing and production sequence and processes were assets of the Debtor's estate.

On March 23, 1993, the court set a Rule 16 pretrial conference on the remaining counts in both complaints for April 19, 1993. The court directed each of the remaining Defendants in the adversary proceedings to file pretrial statements by April 17, 1993. Before the pretrial conference was convened, Defendants' counsel, Weissberg and Associates, filed a motion to withdraw.

On April 2, 1993, at the hearing on Weissberg's motion to withdraw, Barrie Yacher, on behalf of the firm, Lobin & Soren, Ltd., attempted to substitute his appearance for the Defendants' counsel. That motion led to the following exchange:

> YACHER: Your Honor, what my office asked that I say for the record is that we are getting into the case for the purpose of negotiation, and the client understands that that is what we were being hired for. If we can't work it out at the pretrial, then we are going to ask for leave to withdraw because we are not getting into the case for the purpose of trying it.

> THE COURT: Mr. Yacher, as far as I'm concerned, you are in the case. I know I have never heard of somebody getting in and saying I'll get in for negotiation and if I can't settle it I am out. So it's clear in your mind, those are the terms and conditions under which you come in.

---

**2.** Adversary Case Number 91 A 583.

**3.** Pretrial statements were filed on October 7, 1991 and an initial pretrial conference was held on October 8, 1991. On March 10, 1992, the court entered judgment for the Trustee on Count I in the amount of $10,760.

**4.** Adversary Case Number 91 A 746.

If he [Tran] wants to hire a litigator, that's his business. But until I let you out, you're in.

YACHER: All right.

THE COURT: Okay?

YACHER: All right.

Having heard the court's warning, the Lobin firm nevertheless substituted in for the Weissberg firm. Needless to say, neither the Weissberg nor Lobin firm filed the pretrial statements which were due on April 17, 1993 on behalf of the Defendants. At the April 19, 1993 pretrial conference, Marshall Lobin appeared on behalf of the Defendants. When the court inquired as to whether the Defendants would be filing pretrial statements in either adversary proceeding, Lobin stated that he was appearing only to discuss a possible settlement and was not there "to defend anything." The failure of the Defendants to make an appropriate response to the court's preliminary pretrial order and Lobin's obvious lack of preparation for the conference, made the pretrial conference nugatory. As a result, the court was unable to schedule discovery and trial. It appeared to the court that the game of "musical lawyers" was a stalling tactic by the Defendants. Because of the Defendants' actions to impede efficiency in the adversary process, the court determined that the most appropriate sanction to impose in this proceeding was default. The court hoped that such a sanction would convey the message to the Defendants' various attorneys and the bankruptcy bar in the Northern District of Illinois that the court was serious about actively managing proceedings before it. Accordingly, on April 29 and April 30, 1993, the court entered default judgments against the Defendants.

On May 10, 1993, Weissberg & Associates substituted back in for Lobin as the attorneys for the Defendants, thereby confirming the court's suspicions about the intent of the Defendants and their counsel. On May 18, 1993, the Defendants filed a motion to vacate the default judgments in both adversaries

under Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(b). The Defendants claim their failure to file the requisite pretrial statements should be excused.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 542 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E) as a matter arising in the administration of the estate and a proceeding to recover property of the estate. This proceeding is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

### DISCUSSION

■ Fed.R.Civ.P. 60(b) provides that a default judgment may be set aside if the defaulted party can show: (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint. *U.S. v. DiMucci,* 879 F.2d 1488, 1495 (7th Cir.1989). Under Rule 60(b), good cause can consist of mistake, inadvertence, surprise, or excusable neglect. Fed.R.Civ.P. 60(b). The Defendants take the position that their behavior and that of their attorneys should be considered "excusable neglect" for purposes of determining the propriety of Rule 60(b) relief.[5] *See Pioneer Inv. Servs. v. Brunswick Assocs.,* — U.S. —, —, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).

■ If the only issue before the court was the question of whether the conduct of the Defendants and their counsel constitutes excusable neglect, there is no doubt that the result would favor the Trustee. The Defendants' game of musical lawyers obviates any notion of excusable neglect. *See Pioneer,* — U.S. at —, 113 S.Ct. at 1498. The actions by the Defendant in terminating trial counsel and sending an attorney to a pretrial

---

**5.** The Defendants also seem to argue that the court's entry of a default judgment in the second adversary complaint granting the Trustee an injunction was improper as a matter of law, and thus should be vacated under Fed.R.Civ.P. 60(b).

It is clear, however, that alleged mistakes of law should be considered on timely appeal, not pursuant to Rule 60(b). *See In re Roco Corp.,* 37 B.R. 770 (Bkrtcy.R.I.1984).

who was totally unfamiliar with the dispute before the court and whose only authority was to try to negotiate a settlement smacks of intentional delay of the litigation. Certainly the Defendants were able to frustrate the case management system found in Federal Rules of Civil Procedure 16. There is no suggestion of "neglect" by the Defendants or their counsel. In fact, all of their actions appear to be carefully considered and intentional.

However, the question of excusable neglect is not the only issue before the court. While this proceeding was pending, the Seventh Circuit issued its decision in *Ball v. City of Chicago,* 2 F.3d 752 (7th Cir.1993). That decision requires a trial court to carefully consider the propriety of default as, opposed to lesser sanctions, a remedy for misconduct such as is now before this court. In *Ball,* the Seventh Circuit established guidelines regarding the proper procedure to be followed by a trial judge in determining whether to impose a sanction of dismissal for shortcomings in a party's prosecution of the matter. The Seventh Circuit held: "[A] judge should not dismiss a case ... without due warning to the plaintiff's counsel" that dismissal is a possible sanction for failing to comply with a Rule 16 schedule set by the court. *Id.* at 755. The warning given to the attorney must be direct and explicit. *Id.* However, the court need only warn the attorneys who are fault; additional warnings to the client are not required. *Id.* at 756. A default judgment in bankruptcy and a dismissal for want of prosecution both have the similar effect of resolving a dispute without a determination of the merits. This court holds that the standards set forth in *Ball* apply in the instant motion.

Since *Ball* had not been issued when the instant default was entered, obviously the court did not follow the *Ball* requirements before entering a default judgment against the Defendants.[6] The court did not adequately warn counsel that default was a possible sanction for failure to file pretrial statements. While the court did inform substitute counsel that he was responsible for all duties related to representing the Defendants in this case, the court did not explicitly state that Lobin was required to file a pretrial statement by April 17, 1993 and that failure to do so would result in a default judgment against the Defendants. *See Ball,* 2 F.3d at 755.

The court now states for the record that any further delay, neglect or other inappropriate conduct by either the Defendants or any attorneys for the Defendants will result in a default judgment being entered against the Defendants on all counts.

By playing "musical lawyers" in hiring, firing, and rehiring lawyers, the Defendants and their various attorneys delayed this case unnecessarily. In the instant matter, the attorney who appeared for the Defendants at the pretrial conference was utterly (and admittedly) unprepared. As a result, the pretrial was a waste of the trustee's counsel's and the court's time. Another scheduling conference will have to be set. Further, the Defendants' attorneys waited three weeks to file the instant motion even though then counsel of record knew of the defaults when they were entered. Thereafter, they were late in filing certain transcripts referred to in their pleadings that were necessary to complete the record. Their delay in filing the promised transcripts resulted in postponement of this court's ruling on the motion to vacate.

The actions of Defendants and their lawyers has completely frustrated this court's efforts to manage this proceeding efficiently. This court reserves ruling on the propriety of both the previous conduct of Defendants and their counsel and the future conduct of the Defendants and their counsel in this proceeding in terms of sanctions. *See, e.g.,* Fed. R.Bankr.P. 7016, 7037; 28 U.S.C. § 1927. The Defendants and their attorneys have already been warned explicitly that future misconduct may also result in default.

---

6. The court assumes without deciding that *Ball* is to have retroactive effect. *See e.g., Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (setting forth the three considerations recognized as properly bearing upon the issue of retroactivity).

## CONCLUSION

For the foregoing reasons, the Defendants' motion to vacate the default judgment is granted. Accordingly, it is ordered that Count II of the Trustee's adversary proceeding No. 91 A 583 is reinstated and that a pretrial conference is set for January 11, 1994 at 9:00 a.m.