177 F.3d 612
 In re TELESPHERE COMMUNICATIONS, INCORPORATED, Debtor-Appellee,
v.
Appeal of 900 UNLIMITED, INCORPORATED, Telephun, Concepts
900, Phone Programs, Incorporated, and EPS
Company, Appellants.
 No. 98-1553.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 5, 1999.
Decided April 26, 1999.
 
 Kevin M. Brill, The Brill Law Firm, Chicago, IL, Alan S. Nagel (argued), Barnett & Nagel, Palos Hills, IL, for Appellants.
 Leonora L. Shaw, Ross & Hardies, Chicago, IL, Robert M. Fishman (argued), Shaw, Gussis, Domanskis & Fishman, Chicago, IL, for Debtor-Appellee.
 Before POSNER, Chief Judge, and WOOD, Jr., and MANION, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This involuntary bankruptcy situation began in August 1991. Since it is now in this court, with the appeal argued this year, the question is why has so little been accomplished in so long a time. The bankruptcy court and the district court had little trouble in placing much of the blame on counsel for appellants, with the district court imposing sanctions on counsel in the amount of $1,500 for knowingly filing an inaccurate affidavit. We affirm the admirable patience and fairness of both courts as well as the result reached.
 
 
 2
 At this late date, this case deserves no detailed analysis of the problems. A general recap will be sufficient. In August 1991, an involuntary bankruptcy petition was filed against Telesphere Communications, Inc. ("Telesphere"). The case then was converted to a voluntary Chapter 11 case. In mid-1993, the appellants collectively filed unsecured claims against the debtor's estate in the total amount of $3,756,621.61. Each claim listed the law office of Kevin Brill for the purpose of notices concerning the claims. In May 1994, the Telesphere Debtors and Creditors Committee's plan for reorganization was approved by the bankruptcy court. The plan provided for a Telesphere Liquidating Trust and set forth a process by which Telesphere could object to any claims filed.
 
 
 3
 In 1995, Telesphere filed objections to numerous claims including those of appellants. The bankruptcy court notified Mr. Brill that it had set a September 11, 1995 hearing date for the objections. Mr. Brill neither responded to the objections nor appeared at the hearing. The judge continued the hearing until September 28, 1995, at which time Mr. Brill appeared and asked the court for another continuance. Mr. Brill advised the court that he was in the process of contacting the nineteen claimants on whose behalf he had filed claims in the matter to determine if he was to represent them in regard to the objections. Mr. Brill stated that he had been in contact with four of the claimants, Concepts 900, D & G Consultants, Almar, and 900 Unlimited, regarding the objections. The bankruptcy court allowed Mr. Brill an additional seven days to file responses for the four claimants Mr. Brill already had contacted. The bankruptcy judge then entered default judgments against the remaining claimants, advising Mr. Brill that if he succeeded in contacting any of these claimants, he could file motions to vacate the default judgments. The bankruptcy judge set a new hearing date of October 12, 1995. Mr. Brill, however, failed to file any objection responses and did not appear at the October hearing. As a result, on October 12, 1995, the bankruptcy court rendered default judgments against Concepts 900, D & G Consultants, Almar, and 900 Unlimited, disallowing their claims. Copies of those default judgments were served upon Mr. Brill.
 
 
 4
 After that, because of the recovery of particular assets of the debtors and the disallowance or reduction of numerous claims, there was a much more optimistic outlook for distribution to unsecured claimants. Early in 1996, a distribution was made to creditors, but not to the claimants represented by Mr. Brill, whose claims had been disallowed. In June 1997, nearly two years after the entry of the default judgments, Mr. Brill filed motions on behalf of his eleven clients seeking a reconsideration of the default judgments. It was claimed that none of the claimants represented by him had received any notice of the objections to their claims or the default judgment entered on them. These motions were supported by form affidavits in which the claimants asserted that they had not received notice of the objections to their claims or of the default judgments. The motions included affidavits from Concepts 900, D & G Consultants, Almar, and 900 Unlimited, the four claimants that Mr. Brill advised the bankruptcy court he had contacted regarding the objections, stating that they had not received notice and were unaware of the objections to their claims. Some of the affidavits attached to the motions were dated about nine months prior to their filing.
 
 
 5
 In June 1997, Mr. Brill appeared at a hearing on his motions to reconsider and asked the court to set aside the defaults against his clients. Mr. Brill explained that he had sent copies of the objections to his clients by U.S. Mail, but that not one of his clients received that correspondence, nor were the letters returned to Mr. Brill's office. Mr. Brill stated that attorney Alan Nagel, who had joined in representation of claimants, sent additional letters of notice to the claimants which likewise disappeared. The bankruptcy judge's common sense decision was in his discretion to deny all of Mr. Brill's motions to set aside the defaults. He explained it in part to Mr. Brill which deserves repetition here:
 
 
 6
 You can't have people coming in years after the judgments were entered saying that they didn't get notice and wanting the case reopened. There has been both very substantial time that's elapsed since the time these claims were denied on a default basis and, moreover, a very substantial amount of time since most of the parties came to your knowledge and the matters were presented to the court. I can't find any basis for matters that came to your attention in September of last year not being presented to the court until June of this year. That's nine months. And there is no justification for that.
 
 
 7
 . . . . .
 
 
 8
 The other problem I have is that I continue to find the notion that 11 people to whom you sent letters without getting any return of those letters in fact did not receive the notice that you sent to them. That might be the case with one or two, but 11 is simply incomprehensible. I have to assume that you're suggesting that in 11 separate cases the United States Postal Service failed to do its job; that it neither delivered the mail to the proper address, nor returned it to you. And that is something that I just don't find to be credible.
 
 
 9
 Now, that's unfortunate for the one or two people in this group who may be in that circumstance, but I think what happened here is that folks who initially got the notice from you and decided it wasn't worth pursuing, when they found out that there actually was money being distributed changed their mind. And having changed their mind, they were willing to sign an affidavit, obviously in their interest, in the hope of getting some money that they otherwise would not get.
 
 
 10
 Unfortunately, the prospect of getting money will sometimes cause people to execute affidavits that are not accurate. But the prospect of going through prolonged hearings to try to determine what the situation is with respect to each of these affidavits under circumstances where the events in question took place a couple of years ago is something that does not strike me as an appropriate use of judicial time. It's simply too long after the events transpired. And I think too much has taken place both in terms of the administration of this case, and the passage of time to merit this.
 
 
 11
 In the face of that compelling analysis, Mr. Brill filed timely notices of appeal from the bankruptcy court's denial of claimants' motions, but Mr. Brill's promptness did not carry forward. After Mr. Brill failed to file his brief on time in the district court or a motion for an extension of time to do so, appellees filed a motion to dismiss the appeals.
 
 
 12
 Since Mr. Brill remained inactive, the district court granted appellees' motion to dismiss the appeals on October 15, 1997. That got a response. In less than a week Mr. Brill filed a motion to reconsider the dismissal. Appellees responded to that motion in November 1997 and added a request for sanctions against appellants and their counsel.
 
 
 13
 Thereafter, the district court held an evidentiary hearing on December 12, 1997. On January 8, 1998, the district court denied reconsideration and imposed sanctions of $1,500 in attorney's fees on Mr. Brill and Mr. Nagel for knowingly filing a false affidavit by an office manager regarding the time at which certain transcripts necessary to the appeal were ordered. This again prompted a quick response from Mr. Brill in the form of additional motions to reconsider the January 8 order, a motion to file a brief instanter, and another motion to reconsider the January 8 order. These motions were promptly denied in orders dated January 26 and February 5.
 
 
 14
 Appellants then sought relief in this court by filing a notice of appeal from the January 26 and February 5 orders. However, the activity of appellants' counsel slowed again. In violation of Circuit Rule 3(c)(1), appellants failed to file a timely docketing statement. About two weeks later, this court issued a Rule to Show Cause giving appellants an additional fourteen days to file the statement under threat of a $100 fine and/or dismissal of the appeal. This was enough to prompt the filing of the docketing statement. However, appellants' counsel suffered another relapse and failed to file a timely brief or request an extension of time in which to do so. That brief, due April 20, 1998, was filed June 1, 1998, after this court granted appellants' delayed motion for extension of time.
 
 Analysis
 
 15
 Not much analysis is required in the face of the record in both the bankruptcy and the district court. Appellants argue that dismissal is too extreme a sanction; that their defense of excusable neglect was neglected by the district court; and that the sanction of attorney's fees was unjustified, together with several other excuses and complaints. All are without merit.
 
 
 16
 We review the district court's decision to dismiss an appeal from a bankruptcy court order for abuse of discretion. In re Bulic, 997 F.2d 299, 302 n. 3 (7th Cir.1993). The primary defense of appellants' counsel is "that there has been no 'long series of dilatory tactics' from which there could be an assessment of the impact on the overall litigation. In fact, attorneys for claimants' sole misstep was the failure to timely file their brief [in the district court] or seek an extension of time." Appellants further argue that this "sole misstep" was the result of "excusable neglect."
 
 
 17
 Appellants contend that the district court, in analyzing whether "excusable neglect" existed, failed to consider critical factors set forth in Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Among the matters to be considered are the danger of prejudice to the debtor, the length of the delay and its potential impact on the bankruptcy proceedings, and the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith. Id. at 395. That those requirements are sufficiently satisfied in the present case is self-evident. Additionally, the district court clearly considered appellants' arguments regarding excusable neglect, holding an evidentiary hearing on the matter and reasonably determining that appellants' arguments were without merit.
 
 
 18
 Appellants, citing In re Scheri, 51 F.3d 71 (7th Cir.1995), note that courts of appeals have not hesitated to affirm a district court's dismissal of an appeal of a bankruptcy court order when the record demonstrates a consistent pattern of dilatoriness or multiple failures to comply with deadlines, but they argue that our test for dismissal set out in Scheri has not been met in the present case. To make that argument in the face of this record borders on the frivolous even though dismissal is a severe sanction and should be a penalty of last resort. Id. at 74. In Scheri, we stated that " '[t]he district judge should be presumed to have acted reasonably, and reversal is warranted therefore only if it is plain either that the dismissal was a mistake or that the judge did not consider the factors essential to the exercise of a sound discretion.' " Id. at 76 (quoting Ball v. City of Chicago, 2 F.3d 752, 755 (7th Cir.1993)). In our view, the Scheri test has been met in the present case. The district judge found that appellants' counsel knew the date the brief was due and failed to take any action to prosecute the appeal, even after being reminded by opposing counsel that the brief was overdue. The district judge noted that appellants had failed to meet deadlines in the bankruptcy court and had attempted to justify the delay with affidavits that were not credible, resulting in the dismissal of their claims in that court. Furthermore, the district judge found all of appellants' proffered excuses for their failure to file a brief on appeal to the district court lacking in credibility. Having made these findings, the district judge did not abuse her discretion in dismissing the appeal.
 
 
 19
 To the credit of appellants' attorneys they concede fault, but only for the failure to timely file their brief in the district court, and suggest sanctions on themselves rather than on their clients by the dismissal. We trust that the performance of these attorneys in this case is an exception to their customary professional performance. Citing Scheri, counsel for appellants argue that, as an initial matter, the district court should consider sanctioning the lawyer rather than dismissing the action. See Scheri, 51 F.3d at 76. The district judge in the present case not only considered sanctioning the derelict attorneys, she actually imposed sanctions in the amount of $1,500. Furthermore, as the Supreme Court has held, clients may be held responsible for the acts and omissions of their chosen counsel. Pioneer Inv. Services Co., 507 U.S. at 397.
 
 
 20
 We shall not extend the opinion by giving more attention to claimants' other excuses, all of which are without merit.
 
 Appellees call on this court to put
 
 21
 an end to this procedural nightmare--a travesty in which the funds of the Trust, which would otherwise be distributed to creditors of Telesphere on account of such creditors' allowed claims, are instead being expended to combat litigants which in the course of three years of hearings at three levels of the Federal Court system, have managed to miss deadline after deadline, with no plausible excuse.
 
 
 22
 We shall attempt to do that in the hope that this unnecessarily prolonged bankruptcy matter will be interred.
 
 
 23
 All prior orders involved in this appeal are affirmed in all respects.
 
 
 24
 Costs are assessed against counsel for claimants.