In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1631

AURA LAMP & LIGHTING,
INCORPORATED, an Illinois
Corporation,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL TRADING
CORPORATION, a Michigan
Corporation doing business as
Lucent Lighting, Incorporated,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2098—**Joan B. Gottschall,** *Judge*.

ARGUED DECEMBER 12, 2002—DECIDED APRIL 9, 2003

Before FLAUM, *Chief Judge*, MANION and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*.   The district court dismissed this case for want of prosecution and the plaintiff, Aura Lamp & Lighting Inc. ("Aura Lamp"), appeals. At oral argument, the defendant expressed uncertainty about our jurisdiction to hear this appeal because the complaint contained a claim for patent invalidity. Under 28 U.S.C.

§ 1295(a), the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over an appeal from a final decision of a district court if the jurisdiction of that court was based in whole or in part on 28 U.S.C. § 1338, with certain exceptions that do not apply here. Section 1338 grants original jurisdiction to the district courts over any civil actions arising under the federal patent laws, among other things. We agree that the Federal Circuit has jurisdiction over this appeal. Because the appeal is doomed, however, we dismiss rather than transfer the appeal.

## I.

Because the district court dismissed the case for want of prosecution and for violations of discovery orders, the salient facts are few. Aura Lamp and International Trading Corporation ("ITC") allegedly entered into a number of contracts relating to lighting products and their components. The details of these agreements are unnecessary to the resolution of this appeal. Aura Lamp sued ITC in a six-count complaint. Five of the counts allege breach of contract. The sixth claim seeks to invalidate a patent held by ITC. Aura Lamp filed the complaint on April 6, 2000. A few weeks later, the district court ordered Aura Lamp to amend its complaint by May 19, 2000 to cure jurisdictional defects related to certain diversity jurisdiction allegations in the complaint. That date came and went without any amendment to the complaint by Aura Lamp. ITC then moved to dismiss the complaint or in the alternative to transfer the case. The district court set a briefing schedule, ordering Aura Lamp to reply by July 5, 2000. Again the date passed without any action by Aura Lamp. ITC complied with the district court's scheduling order by filing its reply brief even though no responsive brief had been filed by Aura Lamp.

Aura Lamp then belatedly filed a response brief which the district court accepted over ITC's objection. The district court denied the motion to dismiss, ordered Aura Lamp once again to amend its complaint to cure the jurisdictional defect and threatened dismissal if Aura Lamp continued to ignore the court's orders. Aura Lamp then amended the complaint.

On December 21, 2000, the court ordered the close of written discovery by March 21, 2001 and the close of all other discovery by August 1, 2001. Approximately one week later, ITC served interrogatories, document requests and requests for admission on Aura Lamp. Under the Federal Rules of Civil Procedure, Aura Lamp was to respond to this discovery within thirty days. The thirty days passed without a response from Aura Lamp and without any request for an extension of time to respond. Numerous calls and letters from ITC's counsel followed, and Aura Lamp failed to meet two agreed extension dates. ITC then moved to compel discovery, asking that the requests for admission be deemed admitted, and also seeking sanctions. The case was scheduled for a status conference on March 22, 2001, and the court took up the motion to compel at that time. When asked to explain the delays in responding to discovery, Aura Lamp's counsel replied that he was solely responsible for the case, stating, "I wish I had somebody else to go through this stuff." R. 46-1, at 16. He explained that his client was a "one-man operation" that did not have the resources to sort through the documents requested. *Id*. Over ITC's objection, the district court elected to grant one final extension to Aura Lamp, allowing counsel for Aura Lamp to pick the date on which all discovery was to be produced. Several times during the status conference, the court threatened dismissal of the case if Aura Lamp failed to meet the deadline. *See* R. 46-1, at 14-15 ("I'll set a deadline, if the case [sic] isn't met, the case is going away."); R. 46-1, at 13-14 ("I

want to set a date that is going to be real so that if it isn't met, I'm going to take severe action in this case."); R. 46-1, at 16 ("Due to the amount of time it's taken the plaintiff to respond to these discovery requests, and given the enormous amount of time I'm giving you to respond over the objection of the defendants, if there is not good faith compliance by that date, I am going to seriously consider a motion to dismiss for want of prosecution."). *See also* R. 46-1, at 12 ("I'm going to have to take some severe action."); R. 46-1, at 12-13 ("[I]f I set a deadline, given all that's transpired, it's going to have to be it."); R. 46-1, at 16 ("I'm setting a deadline, and I want it to be a real deadline, and I want there to be consequences if it isn't followed."). Aura Lamp's counsel asked to set the deadline to the last working day in April, amounting to an additional one and a half month extension. Shortly thereafter, ITC served a second set of document requests on Aura Lamp.

On the very last day of April 2001, Aura Lamp served ITC with responses that ITC characterized as incomplete and defective. According to ITC, Aura Lamp failed to produce a single page of documents and filed specious objections to both the document and interrogatory requests. Aura Lamp filed no response to ITC's second request for the production of documents. ITC's counsel again tried to resolve the matter with a letter requesting compliance. When Aura Lamp did not respond, ITC moved to dismiss the case for repeated violations of court orders, failure to comply with discovery, and failure to prosecute. On June 15, 2001, the court held a status hearing on the motion. Counsel for Aura Lamp informed the court he wanted to reply to the motion in writing and that he intended to file two motions of his own. Remarkably (given the tenor of the prior hearing), he intended to move to extend time to propound the plaintiff's discovery requests and also for additional time to respond to ITC's request for the produc-

tion of documents. After setting out a deadline for Aura Lamp to file these new motions and briefing schedules for all pending motions, the court set a hearing date of July 11, 2001.

At the July 11 hearing, the court learned that, in addition to missing several other deadlines, Aura Lamp had failed to comply with the briefing schedule set on June 15. R. 46-3, Tr. at 10-12. Counsel for Aura Lamp explained that the most recent delays were due to secretarial difficulties, computer problems, and scheduling challenges posed by an ongoing trial in chancery court. He insisted that his conduct was not wilful and wanton but rather due to unforeseen circumstances beyond his control. The district court replied, "I don't think I have to find wilful and wanton." R. 46-3, Tr. at 28. Ultimately, the court found that Aura Lamp repeatedly missed court-ordered deadlines and failed to prosecute the case. She noted that Aura Lamp had been granted numerous extensions both by the court and by counsel for ITC to no avail. Aura Lamp had also failed to follow basic court procedures by failing to sign many of the documents filed with the court. The court concluded, "[Y]ou brought the case, and the plaintiff has to prosecute a case when they bring it, and the plaintiff hasn't. And I think to allow this to go on anymore would just compound all the problems that have occurred by really doing something that's unfair to the defendants." R. 46-3, Tr. at 36. The court then dismissed the case for want of prosecution and denied all other motions as moot. Aura Lamp appeals.

**II.**

On appeal, Aura Lamp maintains that the district court erred in dismissing the case under Federal Rule of Civil Procedure 37 because that rule requires a finding of wilful and wanton misconduct, and the court thus ap-

plied the wrong standard. Aura Lamp also contends that dismissal under Rule 37 or Rule 41 requires specific warnings prior to dismissal and also requires that the court consider lesser sanctions before dismissing. Aura Lamp argues that the court's warnings were inadequate and that no lesser sanctions were considered before the court dismissed the case. Before we attend to the merits of Aura Lamp's appeal, we must address a question raised by ITC at oral argument.

## A.

The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over certain appeals, including those cases where the jurisdiction of the district court is based, in whole or in part, on 28 U.S.C. § 1338(a). *See* 28 U.S.C. § 1295(a)(1); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807 (1988); *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991). Section 1338 grants original jurisdiction to the district courts over any civil actions arising under the federal patent laws, among other things. *Unique Concepts*, 930 F.2d at 574. To determine whether the district court's jurisdiction is based on section 1338, we must "apply the well-pleaded complaint rule: if the plaintiff must succeed on a question of patent law in order to prevail, then jurisdiction is founded on § 1338, and if not, not." *Id*. In addition to five counts alleging breach of contract, Aura Lamp's complaint contains a claim for patent invalidity. R. 1, ¶¶ 69-76. Thus, the jurisdiction of the district court was based, at least in part, on the patent laws and jurisdiction over the appeal lies exclusively with the Federal Circuit. This is true even though the district court resolved the case without reference to patent law. Recall the court dismissed the case for want of prosecution. We have held that "[i]f the district court's jurisdiction rests on a patent claim, then

an appeal from an entirely non-patent disposition goes to the federal circuit." *In re BBC Int'l, Ltd.*, 99 F.3d 811, 813 (7th Cir. 1996). *See also Kennedy v. Wright*, 851 F.2d 963, 968-69 (7th Cir. 1988) (jurisdiction under the patent laws in the district court is a necessary and sufficient condition of the Federal Circuit's appellate jurisdiction).

Having determined that the Federal Circuit has jurisdiction over the appeal and that we necessarily lack jurisdiction, we are left with a single question. We must decide whether to dismiss the case or, in the interest of justice, transfer it to the Federal Circuit. *See* 28 U.S.C. § 1631; *Christianson*, 486 U.S. at 818; *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999). ITC urges us to dismiss rather than transfer the case. At this stage of the proceedings, we may "take a peek" at the merits because whether the appeal has any possible merit bears significantly on our decision to transfer or dismiss the appeal. *Phillips*, 173 F.3d at 610-11. We may do so even though we lack jurisdiction to decide the merits. *Phillips*, 173 F.3d at 611.

**B.**

ITC moved to dismiss the complaint with prejudice "pursuant to Fed.R.Civ.Proc. 37(d) and/or 41(b)." R. 25, at 4. The district judge ultimately dismissed the case for want of prosecution pursuant to Rule 41(b) but she also discussed and may have relied upon Aura Lamp's violations of orders related to discovery. In an abundance of caution we will therefore address Aura Lamp's Rule 37 arguments as well. As we concluded above, we may consider the consequences of transfer before deciding whether to transfer. *Phillips*, 173 F.3d at 611. "[T]here is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed[.]" *Id.* Here, because the case was dismissed for want of prosecution and violations of discovery orders, the district court's rul-

ing rests on procedural matters not unique to patent law. The ruling would thus be reviewed under the law of our own circuit. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975 (Fed. Cir. 1993). In our Circuit, we review for abuse of discretion the district court's decision to sanction a plaintiff by dismissing a suit. *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998); *Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 592 (7th Cir. 1992). Our review of a dismissal for want of prosecution is highly deferential. *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993). In order to find an abuse of discretion, the district court's decision must strike us as fundamentally wrong. *Williams*, 155 F.3d at 857; *Ladien v. Astrachan*, 128 F.3d 1051, 1056 (7th Cir. 1997) (we are obligated to affirm the dismissal unless it is clear that no reasonable person could concur in the trial court's assessment).

Certain principles guide the district court in determining whether to dismiss a case for want of prosecution pursuant to Rule 41. Ideally, the district court should consider the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, the apportionment of responsibility for those failures between the plaintiff and his counsel, the effect of those failures on the judge's calendar and time, the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents. *Ball*, 2 F.3d at 759-60. "There is no 'grace period' before dismissal for failure to prosecute is permissible and no requirement of graduated sanctions, but there must be an explicit warning before the case is dismissed." *Ball*, 2 F.3d at 760. Aura Lamp asks us to find the district court abused its discretion in dismissing the case because (1) the court did not adequately warn Aura Lamp that the case would be dismissed; (2) the court failed to consider whether lesser

sanctions would be effective; (3) Aura Lamp's violations were not of sufficient frequency or magnitude to warrant dismissal; (4) in apportioning the fault between the parties, the district court should have found that ITC's conduct was responsible for more egregious delays than Aura Lamp's; (5) neither the court nor the defendant suffered prejudice due to Aura Lamp; (6) Aura Lamp's claims are meritorious.

We begin with the issue of warning. The district judge is not obliged to warn the plaintiff repeatedly nor is the court required to issue a formal rule to show cause before dismissing a case. *Ball*, 2 F.3d at 755. "A judge is not obliged to treat lawyers like children" *Ball*, 2 F.3d at 755. All that is required is explicit warning. Here, the court repeatedly and expressly warned Aura Lamp that it was contemplating dismissal during the March 22 status conference. *See* R. 46-1, at 14-15 ("I'll set a deadline, if the case [sic] isn't met, the case is going away."); R. 46-1, at 13-14 ("I want to set a date that is going to be real so that if it isn't met, I'm going to take severe action in this case."); R. 46-1, at 16 ("Due to the amount of time it's taken the plaintiff to respond to these discovery requests, and given the enormous amount of time I'm giving you to respond over the objection of the defendants, if there is not good faith compliance by that date, I am going to seriously consider a motion to dismiss for want of prosecution."). This is by no means a complete list of the court's warnings but is merely a representative sample. These warnings are more than adequate. Aura Lamp was on notice of the consequences of further failures to respond to the court's orders.

Aura Lamp also faults the court for failing to consider the efficacy of lesser sanctions first. Although we recommend that courts consider sanctioning a misbehaving lawyer before the sanction of dismissal is imposed on a possibly faultless plaintiff, we do not require that courts

do so. *Ball*, 2 F.3d at 758. At the July 11 hearing, as the court was ruling on the motion to dismiss, counsel for Aura Lamp asked the court to allow him to resign from the case and find someone else who could handle the case properly. The court replied that it was too late for such a maneuver. The district judge acknowledged that both counsel and his client had difficulties in prosecuting the case but that ultimately the plaintiff was responsible for prosecuting the case and had failed to do so. Clearly the court believed this was the only effective sanction at the time. Especially in light of counsel's earlier admission that his client was a "one-man operation" without the resources to respond to discovery, it would appear that the court did not abuse its discretion in refusing to impose lesser sanctions. *See also Dickerson v. Board of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1117 (7th Cir. 1994) (where a pattern of dilatory conduct is clear, dismissal need not be preceded by the imposition of less severe sanctions).

Aura Lamp next argues that its violations were not sufficiently egregious and were too infrequent to warrant such a harsh sanction. This claim is easily answered by merely listing the violations. In addition to failing to sign pleadings filed with the court, Aura Lamp repeatedly missed court-imposed deadlines for both discovery and motion practice, ignored agreed extensions, and failed to amend its complaint to cure a jurisdictional defect for several months after the court ordered it do so. Moreover, Aura Lamp asked permission to propound discovery on the defendant after the court-ordered discovery cut-off date, a date that Aura Lamp's counsel had himself selected at the court's invitation. We have upheld dismissals in cases where the violations were comparable to or less severe than they are here, and no court would find an abuse of discretion in these circumstances. *Dickerson*, 32 F.3d at 1117; *Ball*, 2 F.3d at 753.

Aura Lamp maintains that ITC caused at least some of the delay. But in apportioning the fault between Aura Lamp and ITC, Aura Lamp offers no valid evidence of dilatory conduct by ITC that contributed to any of Aura Lamp's failures. The sum and substance of Aura Lamp's argument on this point is that ITC did not tell Aura Lamp's counsel that his extraordinarily late responses to discovery were evasive and incomplete. Aura Lamp also complains that ITC did not contact its counsel concerning responses to ITC's request for production of documents. Aura Lamp claims it made the documents available for inspection and ITC did not take advantage of the opportunity to review them. However, Aura Lamp fails to mention that ITC specifically requested that Aura Lamp photocopy the documents and forward them to ITC. This argument is frivolous. So too is Aura Lamp's claim that neither the court nor the defendant suffered any prejudice at its hands. The district court specifically listed the motions that ITC was forced to bring to protect its interests in the case, adding needless expense to the case and clogging the court's docket. R. 46-3, at pp. 34-36. We conclude that this is not a close question. On the Rule 41 issues, the appeal is doomed and need not be transferred to the Federal Circuit.

There is no more merit to Aura Lamp's Rule 37 argument. The only issue here is whether the court applied the wrong standard when it dismissed the case without expressly finding that Aura Lamp's conduct was wilful and wanton. We have held that when a court enters a default judgment as a discovery sanction, the court must find that the party against whom sanctions are imposed displayed wilfulness, bad faith or fault. *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001). Although we strongly encourage courts to make this finding explicitly, we may infer it, if necessary, from the sanction order itself. *Id.* The court here stated that it did not need to find "wilful and wanton"

conduct, and that is correct. "Wilful and wanton" implies a more culpable level of conduct than wilful. Aura Lamp has cited no case applying Rule 37 (and we could find none) requiring a court to find that a plaintiff has acted in a wilful and wanton fashion before the court may impose the sanction of dismissal. Indeed, some of our cases suggest the court need not find even wilfulness. *See Golant*, 239 F.3d at 936 n.1 (collecting cases). We will presume for the purposes of this appeal that the court was required to find at least a wilful violation of discovery orders before dismissing a case. Evidence of the court's implicit finding on wilfulness appears in its final remarks before dismissing the case:

> I don't want to hear any more argument. I can't bend over anymore. I just think that yes, there may have been excuses for what happened in April, but you can't look at excuses for what happened in April when you're trying to find excuses for what happened in January, February and March. And it's just inadequate. I mean, I don't even have to deal with the fact that I'm getting all these things from the clerk's office telling me that you're not complying with the basic rules of filing documents, like signing it. I mean, you don't need a word processor to sign a document.

R. 46-3, at p. 35. The court thus found that Aura Lamp had no adequate excuse for its repeated failures to comply with discovery for a period of at least three months. Indeed, Aura Lamp had failed to propound discovery on the defendant as of July 2001, more than a year after filing the case. This serves as evidence both of failure to prosecute the case and failure to comply with discovery orders. The court's palpable exasperation with the plaintiff is more than sufficient to infer a finding of wilfulness. The court did not abuse its discretion in granting the sanction of dismissal for Aura Lamp's repeated, unexplained failures to comply with discovery orders.

### III.

We conclude that we should dismiss the case rather than transfer it to the Federal Circuit. *See* 28 U.S.C. § 1631; *Christianson*, 486 U.S. at 818; *Phillips*, 173 F.3d at 610. Under the deferential standards the Federal Circuit would employ to review a dismissal under Rules 37 and 41, Aura Lamp would not prevail. The appeal is "clearly doomed" and there is no reason to waste judicial resources or the resources of the parties by transferring the case. *Phillips*, 173 F.3d at 611. The appeal is therefore

DISMISSED.

A true Copy:

      Teste:

 

*Clerk of the United States Court of Appeals for the Seventh Circuit*